IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BAYTOWN, TEXAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of

the United States and through the undersigned attorneys, acting at the request of the

Administrator of the United States Environmental Protection Agency ("EPA"), and the State of

Texas ("Texas"), by the authority of the Attorney General of Texas and through its undersigned

counsel, acting at the request of the Texas Commission on Environmental Quality ("TCEQ"),

jointly file this Complaint and allege as follows:

## NATURE OF ACTION

1.      This is a civil action for injunctive relief, civil penalties, and attorney's fees

brought under Section 309(b) and (d) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C.

§§ 1319 (b) and (d), and under Sections 7.032, 7.101, 7.105 and 7.108 of the Texas Water Code,

against Defendant, the City of Baytown located in Harris County, Texas ("Baytown" or the

"City") for: (1) unpermitted and illegal discharges of pollutants in violation of Section 301(a) of

the CWA, 33 U.S.C. § 1311(a), and Section 26.121 of the Texas Water Code and (2) failure to comply with the terms and conditions of Texas Pollutant Discharge Elimination System permits issued to Baytown ("TPDES permits"), in violation of Sections 7.101 and 26.121 of the Texas Water Code.

2.      Texas has joined this action as a plaintiff, thereby satisfying the requirement of Section 309(e) of the CWA, 33 U.S.C. 1319(e).

## JURISDICTION, VENUE, AUTHORITY, AND NOTICE TO THE STATE

3.      The Court has subject matter jurisdiction over this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1331, 1345 and 1355.

4.      The Court has supplemental jurisdiction over the Texas state law claims alleged herein pursuant to 28 U.S.C. § 1367(a), because the Texas claims are related to the federal claims and form part of the same case or controversy.

5.      The Court has personal jurisdiction over the City and venue is proper in the Southern District of Texas pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because this is the judicial district where the City is located and where the alleged violations occurred.

6.      The Attorney General of the United States is authorized to appear and represent the United States in this action pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

7.      The Texas Attorney General has authority to bring this action on behalf of TCEQ in accordance with Section 7.105 of the Texas Water Code.

8.      As a signatory to this Complaint, Texas has actual notice of the commencement of this action in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## PARTIES

9.      The United States is acting at the request and on behalf of the EPA Administrator.

10.      Texas is acting at the request and on behalf of TCEQ and is a party in this action in accordance with Section 309(e) of the CWA, 33 U.S.C. § 1319(e).

11.      Baytown is a city and a political subdivision of Texas, created pursuant to the laws of Texas.

12.      Baytown is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

13.      Baytown is a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. § 1362(5), the regulations promulgated thereunder at 40 C.F.R. § 122.2, and as defined by Section 26.001(25) of the Texas Water Code.

## STATUTORY BACKGROUND

### A.  Clean Water Act and Texas Water Code

14.      The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

15.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person to waters of the United States except in compliance with that section, and, where applicable, a national pollutant discharge elimination system ("NPDES") permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16.      The Texas Water Code provides that no person may discharge sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state, except as authorized by TCEQ.  Texas Water Code § 26.121.

17.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of pollutants" as any addition of any pollutant to navigable waters from any point source.

18.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to include sewage, sewage sludge, biological materials, and municipal waste.

19.     Pursuant to Section 26.001(13) of the Texas Water Code, the term "pollutant" includes sewage.

20.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines the term "point source" as any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, or conduit from which pollutants are or may be discharged.

21.     Texas Water Code § 26.001(21) defines the term "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, or conduit" from which pollutants or wastes are or may be discharged.

22.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as the waters of the United States, including the territorial seas.

23.     Pursuant to Section 26.001(5) of the Texas Water Code, water in the state includes groundwater, percolating or otherwise, lakes, bays, ponds, impounding reservoirs, springs, rivers, streams, creeks, estuaries, wetlands, marshes, inlets, canals, the Gulf of Mexico inside the territorial limits of the state, and all other bodies of surface water, natural or artificial, inland or coastal, fresh or salt, navigable or non-navigable, and including the beds and banks of all watercourses and bodies of surface water, that are wholly or partially inside or bordering the state or inside the jurisdiction of the state.

24.     Section 212 of the CWA, 33 U.S.C. § 1292, defines "treatment works" as "any devices and systems used in the storage, treatment, recycling and reclamation of municipal

sewage or industrial wastes of a liquid nature to implement section 1281 [§ 201 of the CWA] . . . including intercepting sewers, outfall sewers, sewage collection systems, pumping, power, and other equipment, and their appurtenances."  Section 26.001(24) of the Texas Water Code defines "treatment works" in a similar manner.

25.     EPA regulations at 40 C.F.R. § 403.3(q), define "publically owned treatment works" or "POTW" as a "treatment works as defined by section 212 of the [CWA], which is owned by a State or municipality (as defined by section 502(4) of the Act)."  *See also* 30 Tex. Admin. Code § 305.2(32) for the state law definition of "publically owned treatment works."

**B.  Federally Issued NPDES and Texas Issued TPDES Permits**

26.     Section 402 of the CWA, 33 U.S.C. § 1342, provides that the permit-issuing authority may issue an NPDES permit (or State equivalent) authorizing the discharge of pollutants, upon condition that such discharge will meet all applicable requirements under specified sections of the Act or such conditions that the Administrator determines are necessary to carry out the provisions of the Act, and subject to other conditions that the Administrator deems appropriate to assure compliance with those requirements.

27.     Under Section 402(b) of the CWA, 33 U.S.C. § 1342(b), EPA may approve a state to administer its own permit program.  Pursuant to Section 402(b), Texas was granted NPDES permitting authority within the jurisdictional boundaries of Texas on September 14, 1998.  Accordingly, by and through TCEQ, Texas issues TPDES permits authorizing the discharge of waste or pollutants into or adjacent to water in the state, pursuant to Section 26.027 of the Texas Water Code.

### C. **Enforcement Authorities of the United States and Texas**

28.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of Section 301 of the CWA, 33 U.S.C. § 1311, or a permit condition or limitation in a permit issued by a state under Section 402 of the CWA, 33 U.S.C. § 1342.

29.     Pursuant to Section 5.230 of the Texas Water Code, the executive director of TCEQ may enforce, among other things, the terms and conditions of any permit, order, standard or rule by injunction or other appropriate remedy in a court of competent jurisdiction.  Pursuant to Section 7.002 of the Texas Water Code, TCEQ may institute legal proceedings to compel compliance with the relevant provisions of the Texas Water Code, rules, orders, permits or other decisions of TCEQ.  Pursuant to Sections 7.032 and 7.105 of the Texas Water Code, at the request of TCEQ, the Texas Attorney General shall institute a suit for injunctive relief and/or civil penalties if it appears that a violation or a threat of a violation of a statute within TCEQ jurisdiction, or a rule adopted or an order or a permit issued under such statute, has occurred or is about to occur.

30.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates a permit condition or limitation in a permit issued by a state under Section 402 of the CWA, 33 U.S.C. § 1342, shall be liable for civil penalties, adjusted for inflation, of up to $59,973 per day for each violation occurring after November 2, 2015 and assessed after January 12, 2022.  40 C.F.R. § 19.4 (including amendments to that regulation that were promulgated at 87 Fed. Reg. 1676 (Jan. 12, 2022) and became effective January 12, 2022).

31.     Section 7.101 of the Texas Water Code states that no person may cause, suffer, allow, or permit any violation of a statute within TCEQ jurisdiction or a rule adopted or an order or permit issued under such statute.  Pursuant to Section 7.102 of the Texas Water Code, any person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper.  Section 7.102 of the Texas Water Code further specifies that each day of a continuing violation is a separate violation. Section 7.108 of the Texas Water Code authorizes Texas to recover its reasonable attorney's fees, court costs, and reasonable investigative costs if it prevails in a suit under Chapter 7, Subchapter D (Sections 7.101 – 7.111) of the Texas Water Code.

## GENERAL ALLEGATIONS

### A.  Baytown's Publicly Owned Wastewater Treatment Works

32.     At all times relevant to this Complaint, Baytown has owned and operated a "treatment works" within the meaning of Section 212 of the CWA, 33 U.S.C. § 1292, and Section 26.001(24) of the Texas Water Code, and a "POTW" within the meaning of 40 C.F.R. § 403.3(q) (the "Baytown POTW")  and 30 Tex. Admin. Code § 305.2(32).

33.     At all times relevant to this Complaint, the Baytown POTW has included four wastewater treatment plants ("WWTPs") and their associated wastewater collection systems.

34.     Baytown's four WWTPs (collectively referred to as the "Baytown WWTPs") and their associated wastewater collection and treatment systems (collection systems) comprise the Baytown POTW.

35.     Each WWTP is a wastewater treatment system used to store, treat, recycle, and reclaim municipal sewage or industrial wastes of a liquid nature.

36.     Each WWTP is fed by an extensive wastewater collection and transmission system ("collection system") designed to convey wastewater, including untreated sewage and other pollutants, from the City's wastewater customers through pipes, channels, tunnels, or other conduits to its corresponding WWTP for treatment.  The combined collection systems for the Baytown WWTPs (the system-wide collection system) include approximately 2,445,339 linear feet (over 460 miles) of sewer mains and include 85 lift stations, and other appurtenances as of 2021.

37.     Collectively, the Baytown wastewater collection and transmission systems associated with each WWTP will be referred to as the "Baytown WCTS."

38.     Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), and Section 26.027 of the Texas Water Code, TCEQ, or its predecessor, the Texas Natural Resources Conservation Commission, issued the City a TPDES permit for each of the City's WWTPs and associated wastewater collection systems (collectively the "Baytown TPDES Permits").

39.     The Baytown TPDES Permits issued and renewed for the Baytown WWTPs are similar in format and content.  Each permit includes among other information: a TPDES number, name and location of the WWTP, one or more outfalls from which the authorized discharge shall occur, receiving waters to which the authorized discharge flows, and the permit issuance (or modification) and expiration dates.

**B.  <u>Baytown Wastewater Treatment Plants and TPDES Permits</u>**

40.     During the period relevant to this Complaint, each of Baytown's WWTPs and its associated collection system operated under a separate TPDES permit.  Each permit after initial issuance was at various times renewed or modified (collectively, "renewed").  Each WWTP processes and treats millions of gallons of wastewater daily.

41.     The Northeast District WWTP (4.0 million gallons daily ("MGD")) is operated pursuant to TPDES permit TX0126543.  The permit was issued on October 12, 2015, expired on August 1, 2018, was renewed on October 31, 2018, and will expire on October 31, 2023.

42.     The West District WWTP (8.0 MGD) is operated pursuant to TPDES permit TX0072834.  The permit was issued on November 26, 2013, expired on July 1, 2018, was renewed on October 30, 2018, and will expire on October 30, 2023.

43.     The East District WWTP (6.0 MGD) is operated pursuant to TPDES permit TX0020117.  The permit was issued on November 8, 2013, and expired on August 1, 2018, was renewed on November 6, 2018, and will expire on November 6, 2023.

44.     The Central District WWTP (6.2 MGD) is operated pursuant to TPDES permit TX0020109.  The permit was issued on October 14, 2015, and expired on August 1, 2018, was renewed November 6, 2018, and will expire on November 6, 2023.

45.     During the times relevant to this Complaint, the TPDES permits for each WWTP authorized the discharge of wastewater from one or more outfalls specified in each permit.

46.     The Baytown WCTS associated with each WWTP are "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14), and Section 26.001(21) of the Texas Water Code.

47.     The Baytown TPDES Permits allow the discharge of wastewater from outfalls associated with the Baytown WWTPs only in accordance with effluent limitations, monitoring requirements and other conditions set forth in each permit and in accordance with TCEQ orders, permits, and Texas laws.

### C. __Prohibitions and Requirements of the Baytown TPDES Permits__

48.     The Baytown TPDES Permits prohibit discharges of wastewater into or adjacent to water in the state from any location in the Baytown WCTS other than the WWTP outfalls specified in each TPDES permit.  *TPDES Permit, Permit Conditions, Compliance ¶ 2.g.*

49.     The Baytown TPDES Permits authorize the discharge of wastewater from the WWTP outfalls subject to the effluent limitations specified in each TPDES permit.  *Effluent Limitations and Monitoring Requirements*.

50.     The Baytown TPDES Permits authorize discharges of treated wastewater from the WWTP outfalls only if such discharges are made in accordance with the effluent limitations, monitoring and reporting requirements, and other conditions set forth in the Baytown TPDES Permits.

51.     Baytown TPDES Permits require Baytown to ensure at all times that each WWTP and its systems of collection, treatment, and disposal are properly operated and maintained.  *See* WWTP Permits at *Operational Requirements ¶ 1.*

52.     The Baytown TPDES Permits state that the permittee has a duty to comply with all conditions of the permit, and that failure to comply with any permit constitutes a violation of the permit and the Texas Water Code.  *Permit Conditions, Compliance ¶ 2.b.*

### D. __Effluent Violations and Unauthorized Sanitary Sewer Overflows__

53.     Pursuant to the terms and conditions of the Baytown TPDES Permits, Baytown reported to TCEQ on hundreds of occasions when effluent limitations were exceeded at the Baytown WWTP outfalls.

54.     Each TPDES permit authorizes the discharge of wastewater containing pollutants only from specified point sources or "outfalls" into specified waters, as stated in each permit, subject to the conditions and limitations specified in each TPDES permit.

55.     Since at least April 2017, Baytown's failure to properly operate and maintain the Baytown POTW resulted in structural defects, line breaks, or other deficiencies in the Baytown WCTS.

56.     At all times relevant to this Complaint, structural defects, line breaks, and other deficiencies in the Baytown WCTS allowed the inflow and infiltration of water ("I&I") into the Baytown WCTS.  "Infiltration" as defined by 40 C.F.R. § 35.2005(b)(20) means waters other than wastewater that enters a WCTS (including sewer service connections and foundation drains) from the ground through such means as defective pipes, pipe joints, connections, or manholes.  "Inflow" as defined by 40 C.F.R. § 35.2005(b)(21) means water other than wastewater that enters a WCTS (including sewer service connections) from sources such as, but not limited to, roof leaders, cellar drains, yard drains, area drains, drains from springs and swampy areas, manhole covers, cross connections between storm sewers and sanitary sewers, catch basins, cooling towers, storm water, surface runoff, street wash waters, or drainage.

57.     On over 800 hundred occasions since April 2017, Baytown has released untreated sewage from the Baytown WCTS at locations other than the WWTP outfalls.  Such releases from the collection systems are known as "sanitary sewer overflows" or "SSOs."  These releases are unauthorized discharges and were reported by Baytown to TCEQ pursuant to the requirements of the Baytown TPDES Permits.

58.     Subject to a reasonable opportunity for further investigation and discovery, SSOs referred to in Paragraph 57 were caused by I&I, structural defects, line breaks, and other deficiencies in the Baytown WCTS.

59.     On numerous occasions since at least April 2017, untreated sewage released from the Baytown WCTS, namely SSOs, flowed into nearby waters that are "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2 and a "water in the State" within the meaning of Section 26.001(5) of the Texas Water Code. These waters, include but are not limited to: Black Duck Bay, Cedar Bayou, Tabbs Bay, Goose Creek, Cary Creek, Burnett Bay, Scott Bay and Spring Gully, each of which flow to the Houston Ship Channel.  The Houston Ship Channel is part of the Port of Houston, one of the biggest seaports in the United States, and is a 50-mile long designated navigation route for commerce that extends from about four miles east of downtown Houston all the way to the Gulf of Mexico.  The Houston Ship Channel passes through named bodies of water such as Buffalo Bayou and the San Jacinto River until it flows into Galveston Bay where the Houston Ship Channel is still designated all the way into the Gulf of Mexico.

60.     Black Duck Bay is a perennial body of water used for recreational fishing and boating and is adjacent to, and flows into, the Houston Ship Channel as it passes through the San Jacinto River.

61.     Cedar Bayou is a navigable in fact water body that flows approximately 41 miles and enters the Houston Ship Channel.  Segments of Cedar Bayou are used for recreational fishing and boating, and for commercial transportation.  Cedar Bayou flows in a southward direction from its headwaters in Liberty County to its mouth at Galveston Bay.

62.    Tabbs Bay is adjacent to, and flows into, the Houston Ship Channel as it passes through the San Jacinto River.  Tabbs Bay is used for recreational fishing and boating, and is the site of commercial oil and gas production leases.

63.    Goose Creek is a perennial water body that flows approximately 10 miles and enters Tabbs Bay.  Segments of Goose Creek are used for recreational fishing and boating.

64.    Cary Creek is a perennial body of water that rises just north of Baytown and flows approximately 3.2 miles to where it enters Cedar Bayou which flows into the Houston Ship Channel.  Segments of Cary Creek are used for recreational fishing and small craft boating.

65.    Burnett Bay is adjacent to and flows into the Houston Ship Channel as it passes through the San Jacinto River and into Galveston Bay.  Burnett Bay is used for recreational fishing and boating.

66.    Scott Bay is adjacent to and flows into the Houston Ship Channel as it passes through the San Jacinto River.  Scott Bay is used for recreational fishing and boating.

67.    Spring Gully is a water body that rises just northeast outside of Baytown and is intermittent in the upstream segments, becoming perennial when it enters Baytown in the east side.  Spring Gully flows approximately 5 miles and enters Burnett Bay and then the Houston Ship Channel.  Segments of Spring Gully are used for recreational small craft boating.

68.    Subject to a reasonable opportunity for further investigation and discovery, on numerous occasions since at least April 2017, untreated sewage released from the Baytown WCTS, namely SSOs, flowed into nearby waters that are "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2 or a "water in the State" within the meaning of Section 26.001(5) of the Texas Water Code.

## <u>FIRST CLAIM FOR RELIEF</u>

### (ON BEHALF OF THE UNITED STATES AND TEXAS)
### Failure to Comply with Baytown TPDES Permits' Effluent Limitations

69.     Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

70.     On numerous occasions since at least April 2017, Baytown discharged effluent from its WWTPs that failed to comply with the Effluent Limitations contained in Baytown TPDES Permits, including, for example, limits for enterococci, ammonia nitrogen, Biochemical Oxygen Demand, total copper, and pH.

71.     Each day of each discharge that failed or fails to comply with any Effluent Limitation in any Baytown TPDES Permit is a separate violation of the TPDES Permit.

72.     Unless restrained by an order of the Court, Baytown will continue to violate the Effluent Limitations contained in the Baytown TPDES Permits.

73.     As a result of its violations of the terms and conditions of applicable Baytown TPDES Permits, Baytown is subject to both injunctive relief, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and civil penalties, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as described in Paragraph 30 above (unless previously addressed through administrative penalty action).

74.     As relevant to the claims of Texas, Section 7.101 of the Texas Water Code states that no person may cause, suffer, allow, or permit a violation of a permit issued under TCEQ's jurisdiction.  As relevant to the claims of Texas, Section 7.102 of the Texas Water Code provides that any person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper.  Section 7.102 of the Texas Water Code further specifies that each day of a continuing violation is a separate violation.

75.     As relevant to the claims of Texas, Section 7.032 of the Texas Water Code authorizes the Court to issue a permanent or temporary injunction to require compliance with the Texas Water Code when a person violates a provision of a TCEQ rule or permit.

**SECOND CLAIM FOR RELIEF**
**(ON BEHALF OF THE UNITED STATES AND TEXAS)**
**Failure to Properly Operate and Maintain the Baytown POTW as Required by the Baytown TPDES Permits**

76.     Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

77.     SSOs occurred on numerous occasions, numbering in the hundreds, since at least April 2017, as the result of I&I, structural defects, line breaks and other deficiencies arising from Baytown's failure to properly operate and maintain the Baytown POTW.

78.     Each day of each SSO caused by Baytown's failure to properly operate and maintain the Baytown POTW constitutes a separate violation of Paragraph 1 of the Operational Requirements found in the applicable Baytown TPDES Permits.

79.     Unless restrained by an order of the Court, Baytown will continue to fail to properly operate and maintain the Baytown POTW and will continue to experience SSOs, in violation of the Baytown TPDES Permits.

80.     As a result of its violations of the terms and conditions of applicable Baytown TPDES Permits, Baytown is subject to both injunctive relief, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and civil penalties, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as described in Paragraph 30 above.

81.     As relevant to the claims of Texas, Section 7.101 of the Texas Water Code states that no person may cause, suffer, allow, or permit a violation of a permit issued under TCEQ's jurisdiction.  As relevant to the claims of Texas, Section 7.102 of the Texas Water Code provides that any person who causes, suffers, allows, or permits a violation of a statute, rule, order, or

permit shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper. Section 7.102 of the Texas Water Code further specifies that each day of a continuing violation is a separate violation.

82.     As relevant to the claims of Texas, Section 7.032 of the Texas Water Code authorizes the Court to issue a permanent or temporary injunction to require compliance with the Texas Water Code when a person violates a provision of a TCEQ rule or permit.

### THIRD CLAIM FOR RELIEF
### (ON BEHALF OF THE UNITED STATES AND TEXAS)

**Unauthorized Discharges of Wastewater in Violation of the
Baytown TPDES Permits**

83.     Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

84.     The SSOs that occurred from the Baytown WCTS on numerous occasions since at least April 2017, and that continue to occur, were unauthorized discharges of wastewater into or adjacent to water in the state from locations not authorized in the Baytown TPDES Permits.

85.     Each day of each SSO constitutes a separate violation of Condition 2.g of the Permit Conditions found in the applicable Baytown TPDES Permit.

86.     Unless restrained by an order of the Court, Defendant Baytown will continue to experience SSOs, in violation of the Baytown TPDES Permits.

87.     As a result of its violations of the terms and conditions of applicable Baytown TPDES Permits, Baytown is subject to both injunctive relief, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and civil penalties, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as described in Paragraph 30 above.

88.     As relevant to the claims of Texas, Section 7.101 of the Texas Water Code states that no person may cause, suffer, allow, or permit a violation of a permit issued under TCEQ's

jurisdiction.  As relevant to the claims of Texas, Section 7.102 of the Texas Water Code provides that any person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper.  Section 7.102 of the Texas Water Code further specifies that each day of a continuing violation is a separate violation.

89.     As relevant to the claims of Texas, Section 7.032 of the Texas Water Code authorizes the Court to issue a permanent or temporary injunction to require compliance with the Texas Water Code when a person violates a provision of a TCEQ rule or permit.

**FOURTH CLAIM FOR RELIEF**
**(ON BEHALF OF UNITED STATES)**
**Unpermitted Discharges of Pollutants in Violation of Section 301 of the CWA**

90.     Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

91.     Since at least April 2017, on numerous occasions, Baytown has discharged pollutants, including treated and untreated sewage, as a result of SSOs from the Baytown WCTS. Subject to a reasonable opportunity for further investigation and discovery, all or some of these discharges reached waters of the United States from point sources, including, for example, manholes or storm drains, in violation of Section 301 of the CWA, 33 U.S.C. § 1311.

92.     The majority of SSOs occurred as overflows at manholes, and upon information and belief, many of the SSOs released from manholes flowed to storm drains and then to the receiving waters.

93.     The manholes, pipes, conduits, and other locations in the Baytown WCTS from which the SSOs were released are "point source[s]" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

94.     The SSOs and the consequent discharge of pollutants, such as untreated sewage, from the Baytown WCTS were not and are not authorized by the Baytown TPDES Permits.

95.     Each day of each unauthorized discharge of a pollutant into waters of the United States constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311.

96.     Unless enjoined by an order of the Court, Baytown will continue to discharge pollutants from the Baytown WCTS in violation of Section 301(a) of the CWA and 33 U.S.C. § 1311(a).

97.     As a result of its violations, Baytown is subject to both injunctive relief, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and civil penalties, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as described in Paragraph 30 above.

**FIFTH CLAIM FOR RELIEF**
**(ON BEHALF OF TEXAS)**
**Unauthorized Discharges of Sewage and Municipal Waste into Waters in the State in Violation Section 26.121 of the Texas Water Code**

98.     Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

99.     Since at least April 2017, on numerous occasions, Baytown has discharged pollutants, including treated and untreated sewage, as a result of SSOs from the Baytown WCTS to waters in Texas, including groundwater percolating or otherwise, streams, creeks, and other bodies of surface water inside the state.

100.    The SSOs and the consequent discharge of pollutants, such as untreated sewage, from the Baytown WCTS were not and are not authorized by the Baytown TPDES Permits.

101.    Each unauthorized discharge of sewage into or adjacent to any water in the state constitutes a separate violation of Section 26.121 of the Texas Water Code.

102.    Section 7.101 of the Texas Water Code states that no person may cause, suffer, allow, or permit a violation of a permit issued under TCEQ's jurisdiction.  Section 7.102 of the

Texas Water Code provides that any person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper. Section 7.102 of the Texas Water Code further specifies that each day of a continuing violation is a separate violation.

103.    Section 7.032 of the Texas Water Code authorizes the Court to issue a permanent or temporary injunction to require compliance with the Texas Water Code when a person violates a provision of a TCEQ rule or permit.  Unless restrained by an order of the Court, Baytown will continue to discharge pollutants from the Baytown WCTS in violation of Section 26.121 of the Texas Water Code.

### SIXTH CLAIM FOR RELIEF
**(ON BEHALF OF TEXAS)**
**Claim for Attorney's Fees to Texas**

104.    Paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

105.    Texas has expended and will expend through the course of litigation reasonable attorney's fees, court costs, and/or reasonable investigative costs.

106.    Section 7.108 of the Texas Water Code authorizes the Court to award Texas its reasonable attorney's fees, court costs, and/or reasonable investigative costs related to this proceeding if Texas prevails.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States and Texas, request that the Court enter judgment against Defendant City of Baytown on the Plaintiffs' behalf and provide the following relief:

1. Pursuant to Section 309(b) of the CWA, 33 U.S.C § 1319(b), issue a permanent injunction directing Baytown to take all steps necessary to comply with the CWA and the Baytown TPDES Permits, in particular enjoining Baytown from further violations of Section 301 of the CWA, 33 U.S.C § 1311(a), and the regulations promulgated thereunder, and of the terms and conditions of the Baytown TPDES Permits, issued pursuant to Section 402 of the CWA, 33 U.S.C § 1342;

2. Pursuant to Section 7.032 of the Texas Water Code, issue a permanent injunction directing Baytown to take all steps necessary to comply with the Texas Water Code and the Baytown TPDES Permits, in particular enjoining Baytown from further violations of Section 26.121 of the Texas Water Code, and the regulations promulgated thereunder, and of the terms and conditions of the Baytown TPDES Permits, issued pursuant to Section 402 of the CWA, 33 U.S.C § 1342, and Section 26.027 of the Texas Water Code;

3. Pursuant to Section 309(b) of the CWA, 33 U.S.C § 1319(b), assess appropriate civil penalties against Baytown;

4. Pursuant to Section 7.102 of the Texas Water Code, assess civil penalties against Baytown of not less than $50 nor greater than $25,000 per day for each violation;

5. Pursuant to Section 7.108, award Texas its reasonable attorney's fees, court costs, and reasonable investigative costs for this suit; and

6.   Grant the United States and Texas such relief as the Court deems appropriate.

Respectfully submitted,

FOR THE UNITED STATES

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*Kenneth G. Long*

KENNETH G. LONG
D.C. Bar No. 414791
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC, 20044
Ph: (202) 514-2840
Fax: (202) 616-6584
kenneth.long@usdoj.gov
ATTORNEY-IN-CHARGE

JENNIFER LOWERY
United States Attorney
Southern District of Texas

s/ *Jimmy A. Rodriguez*
JIMMY A. RODRIGUEZ
Senior Litigation Counsel
Assistant United States Attorney
Southern District of Texas
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas
Tel: (713) 567-9532
Fax: (713) 718 3303
jimmy.rodriguez2@usdoj.gov

OF COUNSEL:

EFREN ORDÓÑEZ
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VI
1445 Ross Ave., Suite 1200
Dallas, TX  75202

FOR THE STATE OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COLES
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

*s/ Phillip Ledbetter*
PHILLIP LEDBETTER
Assistant Attorney General
State Bar No. 24041316
S.D. Bar No. 1401529
Phillip.Ledbetter@oag.texas.gov
ATTORNEY-IN-CHARGE

Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, Capital Station
Austin, TX 78711-2548
Telephone: 512-475-4152
Facsimile: 512-320-0911

ATTORNEYS FOR THE STATE OF TEXAS