IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> STATE OF TEXAS ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF BAYTOWN ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 4:22-cv-01279 |

# DEFENDANT CITY OF BAYTOWN'S ANSWER TO COMPLAINT

Defendant City of Baytown ("City" "Baytown" or "Defendant") responds to the numbered paragraphs of Plaintiffs' Complaint as follows:

## I.
## NATURE OF ACTION

1. This paragraph sets forth the nature of the claims brought by Plaintiffs. To the extent that a response is needed, Defendant admits that Plaintiffs are seeking civil penalties, injunctive relief and attorney's fees under the Clean Water Act ("CWA") and Texas Water Code.

2. Defendant admits that 33 U.S.C. § 1319(e) requires that the State of Texas be joined as a party whenever the United States brings an action under § 1319 against a municipality in the State of Texas and that the State of Texas has joined this action as a plaintiff.

# II.
## JURISDICTION, VENUE, AUTHORITY AND NOTICE TO THE STATE

3. Defendant admits that this Court has subject matter jurisdiction over the claims brought by the United State in the Complaint under the CWA.

4. Defendant admits that this Court has supplemental jurisdiction over the claims brought in the Complaint by the State of Texas.

5. Defendant admits that this Court has personal jurisdiction over the City and venue is proper in the Southern District of Texas.

6. Defendant admits that the Attorney General is authorized to appear and represent the United States in claims under Chapter 26 of the CWA when requested by the Administrator of the Environmental Protection Agency.

7. Defendant admits that the Texas Attorney General has authority to bring an action under Chapter 7 of the Texas Water Code on the request of the executive director of the Texas Commission on Environmental Quality ("TCEQ") or the Commission.

8. Defendant admits that the State of Texas has actual notice of the action.

# III.
## PARTIES

9. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.

10. Defendant admits that Texas is a party in this action, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 10.

11. Defendant admits that Baytown is a city and political subdivision of Texas.

12. Defendant admits that it is a municipality within the meaning of 33 U.S.C. § 1362(4).

13. Defendant admits that it is a person as defined in 33 U.S.C. § 1362(5), 40 C.F.R. § 122.2, and Section 26.001(25) of the Texas Water Code.

## IV.
## STATUTORY BACKGROUND

### A. Clean Water Act and Texas Water Code

14. Defendant admits that the quote in paragraph 14 from the cited statute is correct.

15. Defendant admits that 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person to waters of the United States except in compliance with § 1311 or a national pollutant discharge elimination system ("NPDES") permit issued by EPA or an authorized state pursuant to 33 U.S.C. § 1342 or in compliance with §§ 1312, 1316, 1317, 1328, and 1344 of Title 33.

16. Defendant admits that Texas Water Code § 26.121 prohibits discharge of sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state, except as authorized by TCEQ.

17. Defendant admits that the definition of "discharge of pollutants" as stated in paragraph 17 of the Complaint is included in 33 U.S.C. § 1362(12).

18. Defendant admits that the definition of "pollutant" as stated in paragraph 18 of the Complaint is included in 33 U.S.C. § 1362(6).

19. Defendant admits that the definition of "pollutant" as stated in paragraph 19 of the Complaint is included in Texas Water Code § 26.001(13).

20. Defendant admits that the definition of "point source" as stated in paragraph 20 of the Complaint is included in 33 U.S.C. § 1362(14).

21. Defendant admits that the definition of "point source" as stated in paragraph 21 of the Complaint is included in Texas Water Code § 26.001(21).

22. Defendant admits that the definition of "navigable waters" as stated in paragraph 22 of the Complaint is included in 33 U.S.C. § 1362(7).

23. Defendant admits that the definition of "water in the state" as stated in paragraph 23 of the Complaint is included in Texas Water Code § 26.001(5).

24. Defendant admits that the definition of "treatment works" as stated in paragraph 24 of the Complaint is included in 33 U.S.C. § 1292(2)(A) and that the definition of "treatment works" in Texas Water Code 26.001(24) is similar.

25. Defendant admits that the phrase "publicly owned treatment works" or "POTW" is defined at 40 C.F.R. § 403.3(q) as set forth in paragraph 25 of the Complaint and that the definition of "publicly owned treatment works" under the Texas Water Code is contained in 30 Tex. Admin. Code § 305.2(32).

### B. Federally Issued NPDES and Texas Issued TPDES Permits

26. Defendant admits that the provision for issuance of NPDES permits under 33 U.S.C. § 1342 is generally paraphrased in paragraph 26 of the Complaint.

27. Defendant admits that under 33 U.S.C. § 1342(b), the EPA may approve a state to administer its own program, that Texas was granted NPDES permitting authority in the State of Texas and that TCEQ issues TPDES permits for the discharge of waste or pollutants into or adjacent to water in the state, pursuant to Texas Water Code § 26.027.

### C. Enforcement Authorities of the United States and Texas

28. Defendant admits that 33 U.S.C. § 1319(b) authorizes civil actions for, among other things, violations of 33 U.S.C. § 1311, or a permit condition or limitation in a permit issued by a state under 33 U.S.C. § 1342.

29. Defendant admits that on approval of the commission, Texas Water Code § 5.230 authorizes the TCEQ executive director to enforce the terms of permits, orders and rules as set forth in paragraph 29 of the Complaint and that Texas Water Code § 7.002 allows the TCEQ to institute legal proceedings. Further, Defendant admits that pursuant to Texas Water Code §§ 7.032 and 7.105, at the request of the executive director, the Texas Attorney General shall bring the enforcement suit as set forth in paragraph 29 of the Complaint.

30. Defendant admits that 33 U.S.C. § 1319(d), as modified by 40 C.F.R. § 19.4, sets the maximum civil penalties for violations of the CWA as set forth in paragraph 30 of the Complaint.

31. Defendant admits that paragraph 31 of the Complaint paraphrases the provisions of Texas Water Code §§ 7.101, 7.102 and 7.108 with regard to the range of civil penalties and the recovery of attorney's fees and costs for Texas Water Code violations.

### V.
### GENERAL ALLEGATIONS

#### A. Baytown's Publicly Owned Wastewater Treatment Works

32. Defendant admits that it owns and operates the Baytown POTW as defined by the relevant statutes, rules and regulations.

33. Defendant admits that the Baytown POTW includes four WWTPs and associated wastewater collection systems.

34. Defendant admits that Baytown's four WWTPs and associated wastewater collection systems comprise the Baytown POTW.

35. Defendant admits the allegations in paragraph 35.

36. Defendant admits that as of 2021, the Defendant's records indicated that the collection systems for the Baytown POTW include over 460 miles of sewer pipe, 85 lift stations and other equipment.

37. Defendant admits that the Complaint uses the term Baytown WCTS as defined in paragraph 37.

38. Defendant admits that the Baytown WWTPs each have TPDES Permits, defined as the "Baytown TPDES Permits" in the Complaint.

39. Defendant admits the allegations in paragraph 39 regarding the Baytown TPDES Permits.

### B. Baytown Wastewater Treatment Plants and TPDES Permits

40. Defendant admits the allegations in paragraph 40 regarding Defendant's WWTPs and their TPDES Permits.

41. Defendant admits that the Northeast District WWTP (4.0 MGD) is operated pursuant to TPDES permit TX0126543 (WQ0010395010) which was issued on October 12, 2015, was renewed October 31, 2018, and will expire on October 31, 2023. Defendant denies that the permit expired on August 1, 2018.

42. Defendant admits that the West District WWTP (8.0 MGD) is operated pursuant to TPDES permit TX0072834 (WQ0010395008) which was issued on November 26, 2013, was

renewed October 30, 2018, and will expire on October 30, 2023. Defendant denies that the permit expired on July 1, 2018.

43. Defendant admits that East District WWTP (6.0 MGD) is operated pursuant to TPDES permit TX0020117 (WQ0010395007) which was issued on November 8, 2013, was renewed on November 6, 2018, and will expire on November 6, 2023. Defendant denies that the permit expired on August 1, 2018.

44. Defendant admits that Central District WWTP (6.2 MGD) is operated pursuant to TPDES permit TX0020109 (WQ0010395002) which was issued on October 14, 2015, was renewed November 6, 2018, and will expire on November 6, 2023. Defendant denies that the permit expired on August 1, 2018.

45. Defendant admits the allegations in paragraph 45 regarding the Baytown TPDES Permits.

46. Defendant admits that the discernible, confined and discrete conveyances in the Baytown WCTS are point sources as that term is defined in the cited statutes.

47. Defendant admits the allegations in paragraph 47 regarding the Baytown TPDES Permits.

### C. Prohibitions and Requirements of the Baytown TPDES Permits

48. Defendant admits that the Baytown TPDES Permits only authorize the discharge of wastewater into or adjacent to water in the state pursuant to their terms and conditions, including Permit Conditions, Compliance ¶ 2.g.

7

49. Defendant admits that the Baytown TPDES Permits authorize the discharge of wastewater pursuant to their terms and conditions, including the *Effluent Limitations and Monitoring Requirements*.

50. Defendant admits that the Baytown TPDES Permits only authorize the discharge of wastewater pursuant to their terms and conditions which include effluent limitations, monitoring and reporting requirements and other conditions set forth in the Baytown TPDES Permits.

51. Defendant admits the allegations in paragraph 51 regarding the Baytown TPDES Permits.

52. Defendant admits the allegations in paragraph 52 regarding the Baytown TPDES Permits.

### D. Effluent Violations and Unauthorized Sanitary Sewer Overflows

53. Defendant admits that in compliance with the terms of the Baytown TPDES Permits, Baytown reported to TCEQ when effluent limitations were exceeded at the Baytown WWTP outfalls, but denies that there were exceedances reported on hundreds of occasions of exceedances during the relevant period.

54. Defendant admits that the Baytown TPDES Permits only authorize the discharge of wastewater containing pollutants pursuant to the terms, conditions and limitations, including specifying "outfalls."

55. Defendant admits that, since April 2017, there have been deficiencies in the Baytown WCTS, but denies that these have necessarily been the result of Baytown's failure to operate and maintain the Baytown POTW properly.

56. Defendant admits that on some occasions there has been inflow and infiltration of water ("I&I") into the Baytown WCTS as those terms are defined in 40 C.F.R. § 35.2005(b).

57. Defendant admits that, since April 2017, there have been releases known as sanitary sewer overflows ("SSOs") from the Baytown WCTS, and that over 800 SSOs were reported by Baytown to TCEQ in compliance with the terms of the Baytown TPDES Permits, subject to Act of God or other applicable defenses.

58. Defendant incorporates its response to paragraph 57. In addition, Defendant admits that over 90% of the SSOs which occurred during the relevant period were the result of heavy rain events and the remainder were the result of other causes as specified in the reports provided to TCEQ.

59. Defendant admits that since April 2017, in compliance with the terms of the Baytown TPDES Permits, Defendant has reported discharges with the designated receiving waters listed in paragraph 59, except for Scott Bay. Defendant has insufficient information that SSOs from the Baytown POTW flowed into Scott Bay. Defendant admits that some of the SSOs from the Baytown POTW may have reached water that meets the definition of "waters of the United States" as defined in 30 U.S.C. § 1362(7), and 40 C.F.R. § 122.2 and/or "water in the State" as defined in Section 26.001(5) of the Texas Water Code. With regard to the specifics of which of the water bodies referenced in paragraph 58 of the Complaint flow either directly or indirectly into the Houston Ship Channel/San Jacinto River, Defendant incorporates its answers to paragraphs 60-67. Defendant admits that by some metrics the Port of Houston is one of the biggest seaports in the United States or that it is over 50 miles long and reaches to the Gulf of Mexico.

60. Defendant admits that Black Duck Bay is a perennial body of water, that it is used for recreational purposes, that it is adjacent to the Houston Ship Channel/San Jacinto River and that it flows into the Houston Ship Channel/San Jacinto River either directly or through Tabbs Bay. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 60.

61. Defendant admits that Cedar Bayou flows generally south, southeast from its origination in Liberty County until it enters Upper Galveston Bay. Defendant admits that parts of Cedar Bayou are used for recreational purposes. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 61.

62. Defendant admits that Tabbs Bay is adjacent to and flows into the Houston Ship Channel/San Jacinto River and that it is used for recreational purposes. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 62.

63. Defendant admits that Goose Creek flows into Tabbs Bay. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 63.

64. Defendant admits that Cary Creek flows into Cedar Bayou. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 64.

65. Defendant admits that Burnett Bay is adjacent to and flows into the Houston Ship Channel/San Jacinto River and that it is used for recreational purposes.

66. Defendant admits that Scott Bay is adjacent to and flows into the Houston Ship Channel/San Jacinto River and that it is used for recreational purposes.

67. Defendant admits that Spring Gully is a water body that enters Burnett Bay. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 67.

68. Defendant admits that, since April 2017, some of the SSOs from the Baytown POTW may have reached water that meets the definition of "waters of the United States" as defined in 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2 and/or "water in the State" as defined in Section 26.001(5) of the Texas Water Code.

## VI.
## FIRST CLAIM FOR RELIEF

69. Defendant incorporates its answers to paragraphs 1-68.

70. Defendant admits that on some occasions since April 2017, discharges from some of the Baytown WWTPs failed to comply with some effluent limitations.

71. Defendant denies that Baytown's TPDES Permits specifically state that each day of each discharge that failed or fails to comply with any effluent limitation in a Baytown TPDES Permit is a separate violation.

72. Defendant denies that it will continue to violate the effluent limitations contained in the Baytown TPDES Permits without an order of the Court. During the relevant period, Defendant has made significant improvements to its WWTPs as part of its ongoing work to improve the Baytown POTW. As a result of the improvements made, Defendant's records reflect that there have been no discharges which exceeded the effluent limitations from at least March 2021 through the filing of the Complaint from any of the Baytown WWTPs.

73. Defendant admits that if there are violations of the terms and conditions of the Baytown TPDES Permits, they may be subject to injunctive relief pursuant to 33 U.S.C. § 1319(b) and/or civil penalties pursuant to 33 U.S.C. § 1319(d).

74. Defendant admits that Sections 7.101 and 7.102 of the Texas Water Code include the statements set forth in paragraph 74 of the Complaint attributed to those sections.

75. Defendant admits that Section 7.032 of the Texas Water Code authorizes, after notice and hearing, a permanent or temporary injunction for compliance with the Texas Water Code.

## SECOND CLAIM FOR RELIEF

76. Defendant incorporates its answers to paragraphs 1-68.

77. Defendant admits that, as reported to the TCEQ in compliance with the terms of the Baytown TPDES Permits, SSOs have occurred since April 2017. Over 90% of the SSOs which occurred during the relevant period were the result of heavy rain events and the remainder were the result of other causes as specified in the reports provided to TCEQ. Defendant denies that those SSOs were predominantly caused by a failure to properly operate or maintain the Baytown POTW.

78. Defendant denies that the paragraph 78 of the Complaint accurately characterizes Paragraph 1 of the Operational Requirements in the Baytown TPDES Permits. Defendant also denies the implication that SSOs were predominantly caused by a failure to properly operate or maintain the Baytown POTW as opposed to heavy rainfall events.

79. Defendant denies that a court order is necessary for Defendant to properly operate and maintain the Baytown POTW. Pursuant to its work in the TCEQ's SSO Initiative (the "SSOI"), Defendant has lessened the number and severity of SSOs from the Baytown POTW. Prior to the

filing of the Complaint, Defendant had engaged a nationally recognized consulting firm to prepare a comprehensive review of the Baytown POTW and a long-term plan to further address the causes of SSOs. Defendant believes that, working in coordination with the EPA and TCEQ, Defendant and its consultants can formulate a plan to address the causes of SSOs in the Baytown POTW without necessity of a court order.

80. Defendant admits that if there are violations of the terms and conditions of the Baytown TPDES Permits, they may be subject to injunctive relief pursuant to 33 U.S.C. § 1319(b) and/or civil penalties pursuant to 33 U.S.C. § 1319(d).

81. Defendant admits that Sections 7.101 and 7.102 of the Texas Water Code include the statements set forth in paragraph 81 of the Complaint attributed to those sections.

82. Defendant admits that Section 7.032 of the Texas Water Code authorizes, after notice and hearing, a permanent or temporary injunction for compliance with the Texas Water Code.

### THIRD CLAIM FOR RELIEF

83. Defendant incorporates its answers to paragraphs 1-68.

84. Defendant admits that as reported to the TCEQ in compliance with the terms of the Baytown TPDES Permits, on some occasions since April 2017, SSOs constituting unauthorized discharges of wastewater into or adjacent to water in the state from locations not authorized in the Baytown TPDES Permits, subject to Act of God or other applicable defenses.

85. Defendant admits that each day of an unauthorized discharge in violation of Condition 2.g of Baytown's TPDES Permits is a separate violation.

86. Defendant denies that a court order is necessary for Defendant to address SSOs in violation of the Baytown TPDES Permits. Pursuant to its work in the TCEQ's SSOI, Defendant

13

has lessened the number and severity of SSOs from the Baytown POTW. Prior to the filing of the Complaint, Defendant had engaged a nationally recognized consulting firm to prepare a comprehensive review of the Baytown POTW and a long-term plan to further address the causes of SSOs. Defendant believes that, working in coordination with the EPA and TCEQ, Defendant and its consultants can formulate a plan to address the causes of SSOs in the Baytown POTW without necessity of a court order.

87. Defendant admits that if there are violations of the terms and conditions of the Baytown TPDES Permits, they may be subject to injunctive relief pursuant to 33 U.S.C. § 1319(b) and/or civil penalties pursuant to 33 U.S.C. § 1319(d).

88. Defendant admits that Sections 7.101 and 7.102 of the Texas Water Code include the statements set forth in paragraph 88 of the Complaint attributed to those sections.

89. Defendant admits that Section 7.032 of the Texas Water Code authorizes, after notice and hearing, a permanent or temporary injunction for compliance with the Texas Water Code.

## FOURTH CLAIM FOR RELIEF

90. Defendant incorporates its answers to paragraphs 1-68.

91. Defendant admits that since April 2017, some of the SSOs from the Baytown POTW may have reached water that meets the definition of "waters of the United States" as defined in 30 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

92. Defendant admits that, as reported to the TCEQ in compliance with the terms of the Baytown TPDES Permits, since April 2017, most SSOs occurred as overflows at manholes and that some may have flowed to storm drains and then to receiving waters, but some may have been contained before reaching receiving waters.

93. Defendant admits that some of the locations in the Baytown WCTS from which SSOs were released since April 2017 may meet the definition of "point source" in 33 U.S.C. § 1362(14).

94. Defendant admits that, as reported to the TCEQ in compliance with the terms of the Baytown TPDES Permits, SSOs from the Baytown WCTS were not authorized by the Baytown TPDES Permits, subject to Act of God or other applicable defenses.

95. Defendant denies that 33 U.S.C. § 1311 states that each day of an unauthorized discharge of a pollutant into waters of the United States constitutes a separate violation.

96. Defendant denies that a court order is necessary for Defendant to address discharge of pollutants from the Baytown WCTS in violation of 33 U.S.C. § 1311. Pursuant to its work in the TCEQ's SSOI, Defendant has lessened the number and severity of SSOs from the Baytown POTW. Prior to the filing of the Complaint, Defendant had engaged a nationally recognized consulting firm to prepare a comprehensive review of the Baytown POTW and a long-term plan to further address the causes of SSOs. Defendant believes that, working in coordination with the EPA and TCEQ, Defendant and its consultants can formulate a plan to address the causes of SSOs in the Baytown POTW without necessity of a court order.

97. Defendant admits that, if proven, violations of 33 U.S.C. § 1311 may be subject to injunctive relief pursuant to 33 U.S.C. § 1319(b) and/or civil penalties pursuant to 33 U.S.C. § 1319(d).

### FIFTH CLAIM FOR RELIEF

98. Defendant incorporates its answers to paragraphs 1-68.

99. Defendant admits that, since April 2017, some of the SSOs from the Baytown POTW as reported to the TCEQ in compliance with the terms of the Baytown TPDES Permits, may have

reached water that meets the definition of "water in the State" as set forth in § 26.001(5) of the Texas Water Code.

100. Defendant admits that except to the extent that it meets a Permit Condition such as 2.h., discharge of untreated sewage from the Baytown WCTS is not authorized by the Baytown TPDES Permits, subject to Act of God or other applicable defenses.

101. Defendant denies that Texas Water Code § 26.121 specifies that each day of an unauthorized discharge of a pollutant into water in the state constitutes a separate violation.

102. Defendant admits that Sections 7.101 and 7.102 of the Texas Water Code include the statements set forth in paragraph 102 of the Complaint.

103. Defendant admits that violation of commission rules or permits issued by the commission may be subject, after notice and hearing, to a permanent or temporary injunction, pursuant to Section 7.032 of the Texas Water Code, for compliance with the Texas Water Code.

## SIXTH CLAIM FOR RELIEF

104. Defendant incorporates its answers to paragraphs 1-68.

105. At this time, Defendant does not have information sufficient to admit or deny the allegations in paragraph 105 of the Complaint.

106. Defendant admits that Texas Water Code § 7.108 authorizes the state to recover reasonable attorney's fees, court costs, and reasonable investigative costs incurred if it prevails in a suit under Water Code Chapter 7, Subchapter D.

# VII.
# DEFENSES

1. Many of the SSOs which are the subject of the Plaintiffs' claims were solely the result of Acts of God the results of which could not be prevented or avoided by the exercise of due care or foresight or subject to other applicable defenses.

2. Some of the SSOs which are the subject of the Plaintiffs' claims did not reach waters of the U.S. or waters in the state.

Respectfully submitted,

BAKER • WOTRING LLP

/s/ *Debra Tsuchiyama Baker*
Debra Tsuchiyama Baker
Attorney-in-Charge
Federal ID No. 6943
Texas Bar No.15089600
Earnest Wotring
Federal ID No. 15284
Texas Bar No. 22012400
David George
Federal ID No. 19330
Texas Bar No.00793212
John Muir
Federal ID No. 9404
Texas Bar No.14630477
700 JPMorgan Chase Tower
600 Travis Street, Suite 700
Houston, Texas 77002
Tel: (713) 980-1700
Fax: (713) 980-1701
dbaker@bakerwotring.com
ewotring@bakerwotring.com
dgeorge@bakerwotring.com
jmuir@bakerwotring.com

**ATTORNEYS FOR DEFENDANTS
CITY OF BAYTOWN**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served on the following through e-filing on June 20, 2022.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

KENNETH G. LONG
D.C. Bar No. 414791
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC, 20044
Ph: (202) 514-2840
Fax: (202) 616-6584
kenneth.long@usdoj.gov
ATTORNEY-IN-CHARGE

JENNIFER LOWERY
United States Attorney
Southern District of Texas

JIMMY A. RODRIGUEZ
Senior Litigation Counsel
Assistant United States Attorney
Southern District of Texas
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas
Tel: (713) 567-9532
Fax: (713) 718 3303
jimmy.rodriguez2@usdoj.gov

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COLES
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

PHILLIP LEDBETTER
Assistant Attorney General
State Bar No. 24041316
S.D. Bar No. 1401529
Phillip.Ledbetter@oag.texas.gov
ATTORNEY-IN-CHARGE
Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, Capital Station
Austin, TX 78711-2548
Telephone: 512-475-4152
Facsimile: 512-320-0911

EFREN ORDÓÑEZ
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VI
1445 Ross Ave., Suite 1200
Dallas, TX 75202

/s/ *Debra Tsuchiyama Baker*
Debra Tsuchiyama Baker